UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN BITZER, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF THE INDIANA DEPT. OF CORRECTION, et al., <br><br> Defendants. | CAUSE NO.: 3:20-CV-342-JD-MGG |

OPINION AND ORDER

John Bitzer, a prisoner without a lawyer, filed a motion for a preliminary injunction seeking placement in a protective custody unit. He states that he has been repeatedly targeted for violence and theft at the Miami Correctional Facility due to reporting that another inmate had attacked him. The Warden responds that correctional officials processed his numerous requests for protection and have taken significant measures to that end.

The purpose of preliminary injunctive relief is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir.1998). "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm

the public interest." *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004). "A potential injury is irreparable when the threatened harm would impair the court's ability to grant an effective remedy." *EnVerve, Inc. v. Unger Meat Co.*, 779 F. Supp. 2d 840, 844 (N.D. Ill. 2011). "Irreparable harm is harm which cannot be repaired, retrieved, put down again, [or] atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997).

The record reflects that, on November 7, 2019, Bitzer reported that he had been sexually assaulted by his cellmate. ECF 6-1. Medical staff took samples from Bitzer and sent them to the Indiana State Police Lab, but the results have not yet been returned. ECF 6-2. Though the investigation remains open pending these results, correctional staff have not yet been able to substantiate the report. *Id.* Nevertheless, Bitzer was moved to housing in a separate phase.[1] ECF 6-1. On November 25, Bitzer reported that he found on his bed a piece of paper with the telephone number and the nickname of his assailant and asked for protective custody. ECF 6-3. Correctional staff denied the request, reasoning that his assailant resided in a different building and that Bitzer did not suggest that any other inmates posed a threat to his safety. *Id.*

In February 2020, internal affairs offered Bitzer housing in protective custody, but he refused. ECF 6-5. On February 24, Bitzer requested protective custody, stating

---

[1] In an affidavit, the Warden attests, "At MCF, inmate housing is divided into two entirely separate units (known as 'Phases')." ECF 6-1 at 2. Though the Warden's definition is somewhat ambiguous, it appears that these phases largely operate as separate prisons on adjoining campuses. *See* Miami Correctional Facility - Facility History, https://www.in.gov/idoc/3123.htm (last visited July 1, 2020).

2

that other inmates had extorted, threatened, and attacked him and that he had only refused protective custody because he believed he could handle these threats. *Id.* In response, correctional staff moved him to a different housing unit. *Id.* On April 8, and April 9, Bitzer requested protective custody, stating that other inmates had harassed him, threatened him, and propositioned him. ECF 6-6; ECF 6-7. On April 10, correctional staff moved him to yet another housing unit. *Id.*

Bitzer attributes the pattern of harassment and threats to the sexual assault report he filed against his cellmate. By contrast, the Warden and the investigatory reports note that Bitzer tested positive for suboxone on numerous occasions and indicate that correctional staff believe his disputes with other inmates are drug-related. ECF 6-1, ECF 6-5; ECF 6-6. Though Bitzer did not file a reply, he filed a letter, informing the court that that the threats to his safety remain ongoing and that he has been approved for a transfer to another facility but was told that it might not occur for up to six months. ECF 14.

To obtain a motion for a preliminary injunction, Bitzer must demonstrate a reasonable likelihood of success on the merits. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[I]n order to state a section 1983 claim against prison officials for failure to protect, [a plaintiff] must establish: (1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Deliberate indifference is a high standard, and is

3

"something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

While Bitzer alleges that inmates throughout the facility are attempting to retaliate against him for reporting his former cellmate in November 2019, correctional staff suspect that such harassment is the result of Bitzer incurring debts to other inmates for suboxone. The record includes substantial evidence to support these suspicions, including evidence that Bitzer has repeatedly tested positive for suboxone and evidence that he has been extorted by numerous inmates at various locations for thousands of dollars. Further, caseworker notes indicate that Bitzer faced extortion from two other inmates in August and September 2019, which predates his sexual assault report.

That is not to say that Bitzer has forfeited his Eighth Amendment rights, but discerning the likely cause of these attacks provides meaningful context to correctional staff's response. Inmates with a tendency to incur debts may cause conflict regardless of their housing assignment, and the portable nature of such conflict makes it more difficult for correctional staff to provide effective protective measures. Moreover, Bitzer makes no effort to reconcile his allegations with his ongoing substance abuse and the fact that the pattern of harassment began before his sexual assault report. These

4

inconsistencies make it more difficult for correctional staff to credit Bitzer's allegations and impedes their investigatory efforts. Despite these difficulties, correctional staff have taken significant measures to protect him. In response to each of Bitzer's request for protection, correctional staff promptly investigated and moved him to another location within the facility. They have offered him protective custody, which he declined, and they now intend to transfer him to another correctional facility. On this record, the court cannot find that correctional staff have acted with deliberate indifference to Bitzer's safety or that Bitzer has demonstrated a reasonable likelihood of success on the merits.

The court must also consider whether Bitzer has demonstrated that he will suffer irreparable harm absent injunctive relief. On May 26, 2020, and on June 17, 2020, Bitzer informed the court that he continues to receive threats from other inmates at his current housing location, but these allegations are vague. ECF 9, ECF 14. He does not identify who is issuing these threats; he does not describe the contents of the threats or the context in which they arose; nor does he indicate that any inmates have acted on these threats. He also declined to elaborate in a reply brief despite the court's express invitation to file one after extending the deadline on its own motion. ECF 13. Moreover, the record demonstrates that Bitzer knows how to seek assistance from correctional staff and that correctional staff will promptly and reasonably respond. Based on the available information, the court cannot conclude that Bitzer will suffer irreparable harm absent injunctive relief.

With respect to the competing and public interests, unnecessary intrusions into the management of prisons are generally disfavored. *See* 18 U.S.C. § 3626(a) (prison-

related injunctions must be necessary to remedy the violation and narrowly tailored); *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) ("Prison officials have broad administrative and discretionary authority over the institutions they manage."). After considering the relevant factors, the court finds that Bitzer has not demonstrated that he is entitled to injunctive relief.

    For these reasons, the court DENIES the motion for a preliminary injunction (ECF 1).

    SO ORDERED on July 1, 2020

                                           /s/JON E. DEGUILIO  
                                        CHIEF JUDGE  
                                        UNITED STATES DISTRICT COURT