UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOHN BITZER,<br><br>    Plaintiff,<br><br>    v.<br><br>WILLIAM HYATTE, NEIL JOHNSON,<br>WORTON, DOES 1-10, SHARON HAWK,<br>JOYCE HOLLAND, JAMES F. GROVES,<br><br>    Defendants. | Case No. 3:20-CV-342 JD |

**OPINION AND ORDER**

John Bitzer, an inmate, alleges that multiple corrections officials failed to protect him from harm by his cellmate and gang members affiliated with his cellmate. He has sued these officials under 42 U.S.C. § 1983 alleging violations of his constitutional rights. One of the Defendants, Assistant Warden Sharon Hawk, has moved to dismiss the complaint counts against her under Federal Rule of Civil Procedure 12(b)(6) (DE 86). The Court will grant her motion.

**A. Factual Background**

Mr. Bitzer, an inmate, filed this lawsuit seeking monetary damages against several prison officials for failing to protect him from other inmates at the Miami Correctional Facility ("MCF") and seeking injunctive relief to obtain protective measures (DE 1).

Mr. Bitzer alleges that he began to have issues with other inmates at MCF when he was transferred to a new housing unit. Specifically, Mr. Bitzer alleges that his new cellmate Taboada, upon discovering Mr. Bitzer is gay, threatened Mr. Bitzer with harm unless he was transferred to a different cell. Mr. Bitzer alleges he attempted to get a transfer by speaking with several MCF

employees but was not transferred for several weeks and while awaiting transfer was repeatedly sexually assaulted by his cellmate. A few days after his eventual transfer, Mr. Bitzer was sent to the hospital for a rape kit. Mr. Bitzer next alleges that "about a month" after being transferred to a new housing unit he was threatened by members of his former cellmate's gang and then assaulted by them (DE 69 ¶ 63).

Pertinent to this motion, Mr. Bitzer claims to have sent "request for interview" slips [Hereinafter "letters"] to several MCF officials about the harm he experienced and threats he received. Mr. Bitzer alleges he sent three letters in total to Assistant Warden Hawk, two discussing Taboada assaulting him and one discussing him being threatened and assaulted by gang members affiliated with Taboada (DE 69 ¶¶ 56, 60, 75).[1] It appears each letter only dealt with a single subject and his first two letters did not discuss Taboada's gang affiliation or the potential for future retaliation (DE 69 ¶¶ 56, 60). Further, it seems that Mr. Bitzer only sent letters after the respective assaults had occurred.

The factual allegations underlying Count III is that Mr. Bitzer sent letters to Assistant Warden Hawk on two other occasions regarding his assault by Taboada, one the day after his last assault and one an unspecified later time (DE ¶¶ 56, 60). The factual allegations underlying Counts II and IV are that Mr. Bitzer sent one letter to Assistant Warden Hawk specifically mentioning he had received threats and been assaulted by members of Taboada's gang, at some point after the assault occurred (DE 69 ¶ 75). Mr. Bitzer alleges the prior two letters regarding his assault by Taboada also give notice to Assistant Warden Hawk of the threat from gang

---

[1] The Complaint does not enumerate how many letters were sent but refers to at least three instances of sending letters to Assistant Warden Hawk. Therefore, the Court will infer Assistant Warden Hawk was sent at least three letters.

2

members but does not articulate why they do so. Mr. Bitzer alleges all the letters he sent to Assistant Warden Hawk went unanswered.[2]

Mr. Bitzer alleges Assistant Warden Hawk had personal knowledge he was being threatened by gang members from the letters he submitted, and she is therefore liable for failing to protect him from the gang members' assault (Count II of the Complaint). Mr. Bitzer also alleges that Assistant Warden Hawk is liable as a supervisor of corrections officers as she knew those officers had a practice of failing to protect him, and similarly situated inmates, from sexual assault (Count III) and assault and intimidation by gang members (Count IV).[3]

### B. Standard of Review

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need

---

[2] The Court notes that Mr. Bitzer indicates he was transferred the day after his first letter was sent to Assistant Warden Hawk which raises some doubt as to whether it can be considered "unanswered" (DE 69 ¶¶ 56, 58). However, under the standard of Rule 12(b)(6) the Court will accept this allegation as true.

[3] The distinction between Count II and Count IV seems to be that Count II alleges Assistant Warden Hawk personally had a duty to protect Mr. Bitzer, while Count IV alleges she had a duty to ensure her subordinates protected Mr. Bitzer.

3

only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### C. Discussion

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

**(1)** *Count II of the complaint fails to state a claim for Failure to Protect from Taboada's Fellow Gang Members regarding Assistant Warden Hawk*

Mr. Bitzer's claim that Assistant Warden Hawk failed to protect him from Taboada's gang members is premised solely on his allegations that he wrote her letters, and she failed to respond. This behavior does not give rise to an Eighth Amendment claim. While the Seventh

4

Circuit has held that grievances and letters sent to prison officials can provide the basis for a § 1983 claim, they do not automatically do so. *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (holding that an inmate's letters to prison administrators may establish § 1983 liability but there is no "ironclad rule" that any prisoner communications to any prison official constitute adequate notice to violate the Eighth Amendment). Further, the plaintiff shoulders the burden of "demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Vance*, 97 F.3d at 993 (quoting *Farmer*, 511 U.S. at 837). The plaintiff bears this burden at the pleadings stage as well as at trial. *Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015) (internal citations omitted).

Mr. Bitzer does not allege Assistant Warden Hawk was personally involved in his situation or that she made any decisions regarding his housing arrangements. Further, Mr. Bitzer does not allege that Assistant Warden Hawk was otherwise briefed on his situation as part of her duties.[4] Rather, he alleges that Assistant Warden Hawk had knowledge of his situation based on the letters he submitted. Mr. Bitzer has not filed any of the letters he sent Assistant Warden Hawk into the record.

Mr. Bitzer alleges his communications to Assistant Warden Hawk were through "requests for interview," a standard prison form. As previously mentioned, the complaint seems to allege at least one letter was sent specifically mentioning the threats from gang members. Mr. Bitzer does not explain why his two letters regarding his assault by Taboada would give Assistant Warden Hawk notice he would later be threatened by gang members. The complaint does not

---

[4] The Court notes this is in contrast with his complaint's allegation that defendant Warden William Hyatte was sent a memo by a subordinate official briefing him as to Mr. Bitzer's situation (DE 69 ¶ 69).

5

provide a detailed description of any of the letters' content, only indicating that Bitzer wrote "about these threats" to Assistant Warden Hawk (DE 69 ¶ 75). Further, Mr. Bitzer seems to allege that each of these letters was only sent after the respective assaults occurred and does not explain why Assistant Warden Hawk would have sufficient notice to protect him from the attacks if she only learned of them afterwards. Ultimately, Mr. Bitzer has not shown the content and manner of transmission of his letters is sufficient to establish Assistant Warden Hawk had notice and therefore his claim cannot survive the motion to dismiss.

Mr. Bitzer's allegations, that Assistant Warden Hawk had sufficient knowledge for liability based solely on his allegedly unanswered letters, are factually similar to the case of *Conway v. Indiana State Prison* which was previously before this Court. 2021 WL 1884915 (N.D. Ind. May 11, 2021). Like this case, *Conway* involved an inmate who alleged he had trouble with other inmates threatening him, so he sought assistance from prison officials. *Id.* at *1. But those officials allegedly did not help him, and he was ultimately subject to extortion and assault by other inmates before being moved. *Id.* at *1–2. Also similar to this case, in *Conway* the plaintiff alleged an Assistant Warden, and the Warden were liable under § 1983 as he had written them letters about his safety concerns, but they did not respond. *Id.*

This Court found the pleadings in *Conway* insufficient to sustain the claims against those officials. This Court noted that Seventh Circuit precedent disapproved of holding a senior official liable under § 1983 solely for failing to respond to a prisoner's letters if they are not directly involved with the issue or responsible for it. *Id.* at *3 (citing *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009)). As the plaintiff's pleadings in *Conway* did not even suggest those officials were personally involved in the events surrounding the plaintiff or made decisions about his housing arrangements, there was insufficient basis for claims against those officials. *Id.* This

6

strongly resembles Mr. Bitzer's claims, where he has not alleged Assistant Warden Hawk was personally involved in the events surrounding him.

Mr. Bitzer argues that his case is distinct from *Conway* and instead more closely resembles cases where the Seventh Circuit, or a district court in the circuit, held a plaintiff's correspondence to prison officials had established sufficient knowledge for a § 1983 claim. However, several of these cases are readily distinguishable as they involve numerous letters and sometimes multiple in person conversations with the defendant officials in concluding notice had been established. *See e.g. Diggs v. Ghosh*, 850 F.3d 905, 908 (7th Cir. 2017) (noting the plaintiff alleged he told the warden of his concerns in person four or five times and submitted multiple grievances, at least one of which was reviewed by the warden's office); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (noting the plaintiff had sent "many letters" to the Warden); *Snow v. Obaisi*, 2021 WL 4439421, *9–10 (N.D. Ill. Sept. 28, 2021) (noting the plaintiff alleged he stopped the warden to speak with him twice and sent him several letters).

*Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015), is a closer fit but still distinguishable. In *Perez*, the Seventh Circuit found that the plaintiff could advance his § 1983 claim against the warden even though he had only submitted one "resident request" to the warden seeking help in resolving grievances related to his medical treatment. *Id*. at 781. In reaching this conclusion, however, the Seventh Circuit grounded its reasoning on the fact the plaintiff alleged the warden, and several other defendants responsible for processing grievances, had actual knowledge of the plaintiff's situation through his "coherent and highly detailed grievances and other correspondences." *Id.* at 782. In contrast Mr. Bitzer has provided virtually no detail about the content of his correspondences. *See Schillinger v. Kiley*, 954 F.3d 990, 996 (7th Cir. 2020) (finding a single, factually sparse, communication was inadequate to establish notice). Given the

limited description of the content, the Court concludes Mr. Bitzer has not established the content of his communications was sufficient to provide notice to Assistant Warden Hawk.

Even if the Court found the letters' content sufficient, their manner of transmission would still merit dismissal. While the letters were sent through a standard prison form, which allows the Court to infer they were properly delivered, Mr. Bitzer's allegations suggest all three letters were only sent after the respective attacks (DE 69 ¶¶ 56, 60, 75). Mr. Bitzer has simply not explained how these letters could have given Assistant Warden Hawk notice to prevent a threat, when they were sent after the threat had already come to pass. Mr. Bitzer also does not explain why his two letters regarding the assault by Taboada would provide warning he might be attacked by gang members in a different housing unit. Accordingly, the Court will grant Assistant Warden Hawk's motion to dismiss Count II of the complaint against her.

**(2)** *Counts III and IV of the complaint fail to state claims of Supervisory Liability for Taboada's Assaults and his Fellow Gang Members Actions regarding Assistant Warden Hawk*

Mr. Bitzer's claims that Assistant Warden Hawk is liable as a supervisor of prison staff lack sufficient factual basis and will be dismissed. As an initial matter, the Court will consider Counts III and IV together as they operate under the same legal theory. Further, the Court recognizes the parties dispute the nature of Mr. Bitzer's claims regarding alleged supervisory liability. Assistant Warden Hawk argues they are legally impermissible *respondeat superior* or *Monell*[5] claims. Mr. Bitzer submits they are permissible supervisor liability claims under § 1983 as contemplated in *Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001). It is clear that the doctrine of *respondeat superior* cannot be used to sustain a § 1983 claim and that *Monell*

---

[5] *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

liability cannot be applied in this case as the defendant is a natural person and not a municipality. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). Therefore, the Court only needs to determine if the pleadings for Counts III and IV satisfactorily articulate liability under the theory described in *Chavez* to determine if they will survive the motion to dismiss. The Court concludes they do not, and the motion will be granted.

According to *Chavez*, while there is no *respondeat superior* liability for § 1983 claims, supervisory liability can exist when a supervisor is personally involved in the unconstitutional conduct of her subordinates. *Chavez*, 251 F.3d at 651. To bring such a claim, a plaintiff must establish the supervisor knew about the conduct and facilitated it, approved it, condoned it, or "turn[ed] a blind eye for fear of what they might see." *Id.* (citing *Jones v. City of Chi.*, 856 F.2d 985, 992–93 (7th Cir. 1988)). That is to say supervisors must act with at least "deliberate, reckless indifference" to be liable and supervisors who are "merely negligent in failing to detect and prevent subordinates' misconduct" are not liable. *Id.*

Examining Mr. Bitzer's pleadings, the relevant portions allege Assistant Warden Hawk "knew that the officers [she] supervised . . . had a practice of failing to protect Bitzer and others similarly situated from [harm]" and that Assistant Warden Hawk "at best, condoned or ignored this practice. At worst, they approved or assisted in it" (DE 69 ¶¶ 92–93, 97–98). On its face, this section of the pleadings lacks factual allegations and merely recites legal elements of the claim as a basis. Such recitation is not a sufficient basis for pleading a claim. *Kaminski v. Elite Staffing Inc.*, 2022 WL 168260, *1 (7th Cir. Jan. 19, 2022) (holding a plaintiff's pleadings must provide more than mere labels or a formulaic recitation of the elements of the cause of action for her complaint to be considered adequate). Additionally, Mr. Bitzer does not offer any explanation of

Assistant Warden Hawk's responsibilities within MCF beyond alleging she held her title for the relevant periods and conclusory allegations that she was a supervisor of two other defendants.

Looking elsewhere in the complaint, Mr. Bitzer alleges two other facts in support of this claim.[6] First, there are the previously discussed letters he submitted to Assistant Warden Hawk. Second, his complaint refers to several other lawsuits that MCF inmates brought against various prison officials alleging failure to protect. Mr. Bitzer argues that together these facts indicate the volume of attacks at MCF is so high that it is "at least plausible" that Assistant Warden Hawk knew her subordinates were failing to appropriately respond to inmates' requests for help and that she either condoned, supported, or turned a blind eye to such behavior (DE 88 at 8).

Mr. Bitzer's argument on how to interpret this evidence requires three sequential conclusions in order to sustain a § 1983 claim. The first is that this evidence illustrates a level of violence in MCF so severe and pervasive that it is itself evidence of unconstitutional behavior by MCF officials. The second is that Assistant Warden Hawk had actual knowledge of her subordinates' unconstitutional behavior. And the third is that, while possessing this knowledge, Assistant Warden Hawk either condoned such behavior or was deliberately indifferent towards it. For the reasons discussed below, while the spate of inmate lawsuits could be interpreted to support the first conclusion, they are insufficient to support either the second or the third conclusion. Further, Mr. Bitzer's letters are insufficient to support any of the three conclusions. Thus, Mr. Bitzer's pleadings have not established a viable supervisory § 1983 claim.

---

[6] The Court notes Mr. Bitzer attempts to introduce additional facts in his response to this motion by referencing two articles which discuss conditions at MCF (DE 88 at 7 n.2). These articles are extrinsic evidence, not incorporated by reference in the pleadings, and will not be considered in adjudicating this motion. Fed. R. Civ. P. 12(b)(6); *United States v. Wood*, 925 F.2d 1580, 1581–82 (7th Cir. 1991).

Mr. Bitzer's letters do not support the first conclusion in his chain of reasoning. Mr. Bitzer only alleges that his letters discuss the harms and threats he personally suffered. Therefore, they do not provide evidence of broader violence at MCF which is so severe and pervasive as to support the inference of unconstitutional behavior as a root cause.

The letters are likewise insufficient to establish the second conclusion of Assistant Warden Hawk's personal knowledge for either Count III or Count IV. The Court begins with Count IV, regarding gang violence. As previously discussed, Mr. Bitzer's sole letter regarding gang threats is insufficient to establish that Assistant Warden Hawk knew about the gang threats against him as his description of its contents is too generic and it was only sent after the gang members assaulted him. Mr. Bitzer's two other letters, exclusively regarding Taboada assaulting him, are likewise insufficient as Mr. Bitzer does not explain why those letters would provide a warning about future gang threats. As the letters cannot support the second conclusion, they also cannot support the third conclusion. Consequently, the letters cannot support Mr. Bitzer's supervisory liability claim in Count IV.

Mr. Bitzer's letters are similarly insufficient to establish the requisite knowledge for Count III, regarding the assault by Taboada. Mr. Bitzer alleges he sent two letters to Assistant Warden Hawk, after Taboada assaulted him, telling her of that assault. However, his description of their content is as generic as his description of the letter regarding the gang threats (DE 69 ¶¶ 56, 60). More importantly, Mr. Bitzer does not explain how they could have given notice to Assistant Warden Hawk if he only sent them after the assaults had occurred. Therefore, the Court cannot conclude they gave Assistant Warden Hawk actual knowledge of his issues with Taboada, and the letters do not establish sufficient knowledge for the supervisory liability claim in Count

III. Consequently, there are insufficient facts for the Court to conclude these letters establish the requisite knowledge to sustain either of the *Chavez* claims.

The lawsuits are also insufficient to establish viable *Chavez* claims. The fact other inmates have filed lawsuits alleging that MCF officials failed to protect them potentially speaks to general conditions of violence within MCF. At most, these lawsuits provide evidence of general violence within the prison which officials could be, and likely should be, aware of but knowledge of such general risks alone cannot sustain a § 1983 claim. *See Brown*, 398 F.3d at 913 (noting deliberate indifference claims cannot be based solely on knowledge of general risks of violence in a prison (internal citation omitted)). Rather, there must be a threat of harm which is particular to the plaintiff. *Id.*

Mr. Bitzer does not explain why the alleged assaults upon other inmates demonstrate a particular threat to him which MCF officers should have been aware of and prevented. For example, he does not offer any explanation suggesting those inmates were similarly situated to him and thus he is at risk from a specific pattern of violence, or any other reasoning to suggest assaults alleged by those inmates represent a particular threat of harm to him. Further, the existence of these lawsuits does not establish Assistant Warden Hawk knew of any unconstitutional conduct by her subordinates or that she was personally involved in such conduct as required for liability under *Chavez*.[7] This is particularly true when it is unclear what her practical role in the prison administration is and whether she is even responsible for supervision of officers and their attendant actions.

---

[7] The court notes that of the twelve additional cases listed in the complaint, only three name Assistant Warden Hawk as a defendant. Two of those have since been dismissed (*Benge v. Hyatte*, 3:20-CV-699-DRL-MGG; *Keel v. Carter*, 3:19-CV-862-PPS-MGG).

In sum, Mr. Bitzer's allegations do not establish that Assistant Warden Hawk was personally involved in any alleged constitutional violations by her subordinates. Therefore, his complaint does not articulate a viable *Chavez* claim. Accordingly, the Court will grant Assistant Warden Hawk's motion to dismiss Counts III and IV of the complaint.

**(3)** *The Court need not reach the issue of qualified immunity*

As the Court has concluded that Mr. Bitzer has failed to state a claim regarding Assistant Warden Hawk, it is unnecessary to determine if she is entitled to qualified immunity.

## IV. CONCLUSION

The Court GRANTS Assistant Warden Hawk's motion to dismiss (DE 86).

SO ORDERED.

ENTERED: February 11, 2022

                                                            /s/ JON E. DEGUILIO
                                                    Chief Judge
                                                    United States District Court