UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOHN BITZER,

    Plaintiff,

v.

WILLIAM HYATTE, et al.,

    Defendants.

Case No. 3:20-CV-342 JD

## OPINION AND ORDER

John Bitzer, an inmate, alleges that multiple corrections officials failed to protect him from harm by his cellmate and gang members affiliated with his cellmate. He has sued these officials under 42 U.S.C. § 1983 alleging violations of his constitutional rights. Two of these defendants, Warden William Hyatte and Correctional Officer Tracy Worden,[1] have moved to dismiss Counts III and IV under Federal Rule of Civil Procedure 12(b)(6). (DE 73.) Defendants Hyatte and Worden have also asked the Court to dismiss the 10 John Doe defendants. (DE 74.) For the following reasons, the Court grants in part and denies in part their motion to dismiss.

### A.    Factual Background

Bitzer alleges he began to experience problems with other inmates when he was transferred to a new housing unit at the Miami Correctional Facility (MCF). (DE 69 ¶ 19.) Upon being transferred, Bitzer was assigned to a cell with William Taboada. (*Id.* ¶ 20.) After discovering that Bitzer was gay, Taboada threatened Bitzer, indicating that Bitzer would be harmed by Taboada or Taboada's gang members unless he transferred to a different cell. (*Id.* ¶¶

---

[1] Tracy Worden was identified as "Worton" in the Second Amended Complaint. (DE 69) However, Defendants indicated the proper spelling was "Worden," which is how the Court will refer to her. (DE 74.)

25–26.) The morning after Taboada made the threat, Bitzer attempted to get a transfer by speaking with Defendant Kenneth Owens, a correctional officer at MCF. (*Id.* ¶ 28.) Bitzer told Owens "exactly what Taboada had threatened" and then spoke with Owens on several other occasions in the following weeks. (*Id.* ¶¶ 29–58.) According to Bitzer, Officer Worden would have also known about what Bitzer told Owens, since Worden was "responsible for bed moves," and Owens "would have told him what Bitzer said." (*Id.* ¶ 80.) Despite Bitzer telling Owens about the threat, it took several weeks for Bitzer to be transferred. (*Id.* ¶¶ 49, 58.) As he waited to be transferred to a different cell house, Bitzer was repeatedly sexually assaulted by Taboada. (*Id.* ¶¶ 44, 45, 48, 53, 54.)

Eventually, Bitzer was transferred to a new housing unit. (*Id.* ¶¶ 49, 58.) Bitzer alleges that "about a month" after being transferred to a new housing unit he found a note on his bed with Taboada's nickname and phone number, which he interpreted as a threat from the members of Taboada's gang who were in his new housing unit. (*Id.* ¶¶ 63–64.) He proceeded to submit a request for protection based on this note, which was ultimately denied by Case Manager Joyce Holland. (*Id.* ¶¶ 67–68.) Bitzer alleges that Holland sent a memo explaining "the situation" to Warden Hyatte, but that "Hyatte did nothing." (*Id.* ¶¶ 69–70.) In the following weeks, several members of Taboada's gang began to threaten Bitzer, telling him that he had to pay them or they would hurt him. (*Id.* ¶¶ 71–73.) Ultimately, the gang members assaulted Bitzer. (DE 69 ¶ 74).

Bitzer initially filed a complaint pro se, seeking damages and an injunction. (DE 1.) However, he later secured representation and filed two amended complaints. (DE 32; DE 38; DE 69.) The Second Amended Complaint asserts four claims:

**Count I**: Failure to Protect from Taboada's Assaults against Estate of Owens, Worton, Does under 42 U.S.C. § 1983 (DE 69 ¶¶ 78–83);

**Count II**: Failure to Protect from Taboada's Fellow Gang Members against Holland, Johnson, Hawk, Hyatte, and Does under 42 U.S.C. § 1983 (*Id.* ¶¶ 84–89);

**Count III**: Supervisory Liability for Taboada's Assaults against Hyatte, Hawk, Worton, and the Does under 42 U.S.C. § 1983 (*Id.* ¶¶ 90–94);

**Count IV**: Supervisory Liability for Taboada's Fellow Gang Members' Actions Against Hawk and Hyatte under 42 U.S.C. § 1983 (*Id.* ¶¶ 95–99).

On July 9, 2021, Defendants Hyatte and Worden filed a motion to dismiss Counts III and IV of Bitzer's Second Amended Complaint. (DE 73.) They also request that the 10 John Doe defendants be dismissed. (DE 74.)

**B.     Standard of Review**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

3

C.  **Discussion**

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

While the "doctrine of *respondeat superior* cannot be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights,"[2] supervisory liability can exist when a supervisor is personally involved in the unconstitutional conduct of her subordinates. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). To bring such a claim, a plaintiff must establish that the supervisor knew about the subordinate's conduct and "facilitate[ed] it, approv[ed] it, condon[ed] it, or turn[ed] a blind eye for fear of what they might see." *Id.* (citing *Jones v. City of Chi.*, 856 F.2d 985, 992–93 (7th Cir. 1988)). That is to say, supervisors must act with at least "deliberate, reckless indifference" to be liable and supervisors

---

[2] Defendants Hyatte and Worden argue in their motion to dismiss that Bitzer is attempting to bring legally impermissible *respondeat superior* or *Monell* claims. Clearly, if Bitzer was attempting to bring Counts III or IV under either of those theories, this would be impermissible. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020) (noting that *respondeat superior* does not apply for § 1983 claims). However, Bitzer asserts that he is attempting to bring claims under the theory of liability articulated in *Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001). Therefore, the Court analyzes whether Bitzer has adequately plead Counts III and IV under that theory.

who are "merely negligent in failing to detect and prevent subordinates' misconduct" are not liable. *Id.*

### *(1) Counts III and IV – Supervisory Liability against Hyatte and Worden*

Defendants Hyatte and Worden first argue that Counts III and IV must be dismissed against them. In Count III, Bitzer brings a claim against Hyatte, Worden, and other defendants for supervisory liability concerning Taboada assaulting Bitzer. (DE 69 ¶¶ 90–94.) In Count IV, Bitzer brings a claim against Warden Hyatte and Deputy Warden Hawk alleging supervisory liability for the assault by Taboada's gang. (DE 69 ¶¶ 95–99.) In both Counts, Bitzer alleges that the supervisory officials "knew that the officers they supervised . . . had a practice of failing to protect Bitzer and others similarly situated from [harm]" and that the supervisory officials, "at best, condoned or ignored this practice. At worst, they approved or assisted in it." (DE 69 ¶¶ 92–93, 97–98). While this language tracks the *Chavez* standard, a mere recitation of the elements of the cause of action is not sufficient to withstand a motion to dismiss. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) ("While a plaintiff need not plead detailed factual allegations to survive a motion to dismiss, she still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate . . . ." (citations and internal quotation marks omitted)).

In another section of his complaint, Bitzer does allege that there have been "13 cases [filed] involving allegations that Miami staff, including these same defendants, failed to protect inmates from abuse from another inmate."[3] (DE 69 ¶ 6.) He argues in his response that "[t]he

---

[3] The Court notes Mr. Bitzer attempts to introduce additional facts in his response to this motion by referencing two articles which discuss conditions at MCF (DE 78 at 4 n.2). These articles are extrinsic evidence, not incorporated by reference in the pleadings, and will not be considered in adjudicating this motion. Fed. R. Civ. P. 12(b)(6); *United States v. Wood*, 925 F.2d 1580, 1581–82 (7th Cir. 1991).

volume of incidents is so high and they are so similar that it is, at least, a plausible inference that Hyatte and Worden (and the other supervisor defendants) know their supervisees are failing to appropriately respond to requests for help like Bitzer's." (DE 78 at 4.) However, the Court does not believe that the mere fact these lawsuits have been filed can plausibly support a claim under *Chavez*. There are two reasons for this. First, citing the filing of other lawsuits, without specifically alleging the facts underlying those lawsuits and how they are similar, does not plausibly support that a pattern of similar activity has occurred. *See Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 504 (W.D. Ky. 2021) ("[M]erely citing other lawsuits does not describe and cannot support a claim that Louisville Metro customarily fails to train officers regarding warrants."); *See Pharaoh v. Dewees*, No. CV 14-3116, 2016 WL 2593842, at *5 (E.D. Pa. May 4, 2016) (reasoning that the fact that lawsuits were filed, "without more, indicates nothing as people may file a complaint for many reasons, or for no reason at all . . . ."). Second, even if these other lawsuits had some tendency to show a generalized risk of violence at MCF, without alleging any specific facts, the lawsuits do not show that the supervisors "approved, condoned, or turned a blind eye" to the unconstitutional conduct of the subordinates against Mr. Bitzer (i.e. the failure of correctional officers to protect Bitzer in response to him being threatened). Again, it's worth emphasizing that "a supervisor cannot be held liable in a § 1983 action unless the individual was personally involved in the wrongful conduct such that he or she caused or participated in the alleged violation." *Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir. 2002).

Bitzer does include more specific factual allegations elsewhere in his Second Amended Complaint. As to Warden Hyatte, Bitzer alleges that, after the threatening note was left on his pillow, Case Manager "Holland sent a memo explaining the situation to Warden Hyatte" and that "Hyatte did nothing." (DE 69 ¶¶ 68–70.) However, nowhere does Bitzer allege that it was the

Warden's responsibility to review housing requests or to involve himself in decisions such as moving prisoners.

This is factually similar to the case of *Conway v. Indiana State Prison* which was previously before this Court. 2021 WL 1884915 (N.D. Ind. May 11, 2021). Like this case, *Conway* involved an inmate who alleged he had trouble with other inmates threatening him, so he sought assistance from prison officials. *Id.* at *1. But those officials allegedly did not help him, and he was ultimately subject to extortion and assault by other inmates before being moved. *Id.* at *1–2. Also similar to this case, in *Conway* the plaintiff alleged a Warden was liable under § 1983 as he had written him letters about his safety concerns, but the Warden did not respond. *Id.*

This Court found the pleadings in *Conway* insufficient to sustain the claims against those officials. This Court noted that Seventh Circuit precedent disapproved of holding a senior official liable under § 1983 for deliberate indifference for failing to respond to an issue they are not directly involved or responsible for. *Id.* at *3 (citing *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009)). As the plaintiff's pleadings in *Conway* did not even suggest those officials were personally involved in the events surrounding the plaintiff or made decisions about his housing arrangements, there was insufficient basis for claims against those officials. *Id.* This strongly resembles Bitzer's claim against Warden Hyatte, as he has not alleged that the Warden was responsible for housing decisions or personally involved in the situation leading to his assault outside of receiving a memorandum from a subordinate vaguely "explaining the situation."

Furthermore, Bitzer has failed to adequately plead Warden Hyatte's knowledge in Counts III and IV. "[D]eliberate indifference may be found where an official . . . knows about unconstitutional conduct and . . . turn[s] a blind eye." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). As to Count III, there are no allegations that Warden Hyatte was told about the

7

threats to Bitzer from his cellmate Taboada or knew of the substantial risk they posed. Therefore, Count III fails to make out a plausible claim. As to Count IV, Bitzer alleges that a note with "Taboada's nickname" and "phone number" were left on his pillow and that he believed this was a threat. (DE 69 ¶¶ 63–64.) He also alleges that he told Case Manager Holland about this note, who concluded that Bitzer "was not at risk" and then sent "a memo explaining the situation to Warden Hyatte." (*Id.* ¶¶ 65–70.) However, nowhere does Bitzer allege that this memo would have given the Warden notice that his subordinates were engaged in unconstitutional conduct. *See Perez*, 792 F.3d at 782 ("[O]nce an official is alerted to an excessive risk to inmate safety or health through a prisoner's correspondence, refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." (citations omitted)). There is also no reason to infer that this memorandum, written by a case manager who had concluded that Bitzer "was not at risk," would have alerted Warden Hyatte to unconstitutional conduct by his subordinates.

Because Bitzer has failed to allege Warden Hyatte's knowledge of his subordinate's unconstitutional conduct, as well as his responsibility over bed moves, Counts III and IV against Warden Hyatte will be dismissed.

Unlike Hyatte, however, the Second Amended Complaint has more detailed factual allegations concerning Correctional Officer Worden and his responsibilities. Bitzer specifically alleges that "Worton is responsible for bed moves and Owens would have told him what Bitzer said." (DE 69 ¶ 80.) Bitzer also alleges that he told Owens about Taboada's threat the morning after it occurred, that he requested to be transferred, that he spoke with Owens multiple times about this transfer, but that it still took him weeks to be moved. (DE 69 ¶¶ 27–57.)

The Court finds that these allegations make out a plausible claim of supervisory liability as to Worden. Failing to correct for his subordinate's refusal to transfer Bitzer, while being

relayed what Bitzer had said to Owens, could plausibly constitute turning a "blind eye" to unconstitutional conduct. Other courts have found that getting numerous requests for assistance from prisoners and taking no action to correct subordinate conduct over an area over which the supervisor possesses responsibility can establish supervisory liability under *Chavez*. *See, e.g., Rice v. Walker*, No. 06-3214, 2010 WL 1050227, at *7 (C.D. Ill. Mar. 16, 2010) ("Plaintiff's numerous letters that received no substantive response from Walker establish a sufficient basis for Section 1983 liability because they demonstrate that Walker 'turned a blind eye' towards the deprival of adequate medical treatment for serious conditions."); *See also Riley–El v. Godinez*, 2015 WL 4572322, at *6 (N.D. Ill. July 27, 2015) (denying warden's motion to dismiss plaintiff's Section 1983 claim, which alleged that the wardens "were responsible for resolving inmate grievances and that they rejected his grievances requesting an soy-free diet and medical treatment," where, "[g]iven their positions as warden and their alleged responsibility to oversee the grievance resolution process, it is reasonable to infer that they could be aware of [plaintiff's] grievances and could have investigated his complaints or intervened"). Like those cases, Worden was told of the threat to Bitzer through Owens, was told of his request for transfer, and yet did nothing to ensure that Bitzer was transferred, despite having responsibility over "bed moves." Accordingly, the Court finds that Count III continues against Worden.

### (2) Counts against 10 John Does

In their motion to dismiss, Hyatte and Worden argue that the ten "John Doe" defendants must be dismissed as well because "maintaining suit against place-holder parties under fictitious names is disfavored." (DE 74 at 8.)

While naming John Doe defendants as placeholders has few benefits, it is a fairly routine practice in federal court. *See Maclin v. Paulson,* 627 F.2d 83, 87 (7th Cir.1980) ("[T]he use of

9

fictitious names for defendants has been routinely approved even without discussion."); *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012) (finding that a claim against a John Doe defendant was prematurely dismissed as the complaint provided "enough factual allegations to infer that the unidentified officer acted maliciously . . .").

However, there is also no blanket rule that allows John Does to stay in a case indefinitely. *See id.* at 864 n. 1 (noting that once the statute of limitations period expires, a plaintiff may not substitute a new party in the place of a John Doe). Hyatte and Worden argue that, even if including John Doe defendants is not broadly disfavored, dismissal is warranted here because Plaintiff does not include factual allegations "sufficient to plausibly suggest that the unnamed 'John Doe' defendants are liable in their individual capacities." (DE 74 at 9.) The Court agrees with this argument.

The only factual allegations concerning the John Does simply recite the elements of the causes of action. For example, in Count III, Bitzer alleges that "Hyatte, Hawk, Worton, and the Does knew that the officers they supervised, including Owens, had a practice of failing to protect Bitzer and others similarly situated from physical and sexual assaults by other inmates." (DE 69 ¶ 92.) As the Court previously discussed, a mere recitation of the elements of the cause of action is not sufficient to withstand a motion to dismiss. *See Bell*, 835 F.3d at 738. Nowhere in Bitzer's complaint does he provide any further description of who the John Doe defendants are or what they did. This clearly falls short of the degree of specific required to raise a plausible claim. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("The degree of specificity required is not easily quantified, but the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.").

Accordingly, the Court will dismiss the counts brought against the John Doe defendants.[4]

**D.    Conclusion**

Based on the foregoing, Defendant Hyatte and Worden's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. (DE 73.) To summarize:

1. The Court GRANTS the motion to dismiss Counts III and IV against Defendant Hyatte. However, Count II proceeds.

2. The Court GRANTS the motion to dismiss all counts against the 10 John Doe Defendants. These parties are DISMISSED.

3. The Court DENIES the motion to dismiss Count III against Defendant Worden.

SO ORDERED.

ENTERED: March 21, 2022

/s/ JON E. DEGUILIO
Chief Judge
United States District Court

---

[4] Bitzer argues that Defendants Hyatte and Worden do not have standing to move to dismiss the John Doe defendants. However, other district courts have granted similar motions with respect to John Doe defendants. *See SCI Illinois Servs., Inc. v. Coli*, No. 11 C 7762, 2012 WL 2152829, at *4 (N.D. Ill. June 5, 2012) (granting Defendant's motion to dismiss "without prejudice with respect to the John Doe Defendants"). Even if the Defendants lacked standing, the Court would *sua sponte* dismiss the John Does in this circumstance, as it seems especially pointless to include a laundry list of John Does where there are not sufficient factual allegations to support a plausible claim against them. *See Hamman v. Starke Cty., Indiana*, No. 3:18-CV-952-PPS-MGG, 2019 WL 1438294, at *4 (N.D. Ind. Apr. 1, 2019) (holding that "John and Jane Doe defendants are subject to dismissal [*sua sponte*] because it is pointless to include lists of anonymous defendants in federal court . . . nor does it otherwise help plaintiff").